## THOMAS ARBUTHNOT V. THE STATE.

### No. 923. Decided April 2, 1896.

### Motion to Retax Costs Decided January 12, 1898.

**1. Special Instruction—Practice.**

It is always proper to refuse a special requested instruction where there is no evidence to authorize it.

**2. Same—Unlawfully Pulling Down a Fence.**

On a trial for unlawfully pulling down a fence, where it appeared that the prosecutor had had quiet, peaceful, and uninterrupted possession of the fence and land that it inclosed for two or three years, Held, that defendant had no right, without prosecutor's consent, to pull down and remove said fence to a point where he, defendant, claimed the line of partition between the two surveys originally ran, and upon which he also claimed said fence had originally been built.

**3. Same—Evidence.**

On a trial for unlawfully pulling down a fence, the question at issue under the statute is not the rightful ownership of the land, but the statute was intended rather to protect the actual possessor of the land and the owner of the fence; and in such cases, the evidence should be confined to the character of, rather than to the right of, possession.

**4. Information.**

Among other statutory requirements for an information, "it must appear to have been presented by the proper officer." Held, that an information which recited that S., county attorney of M. County, "upon the affidavit of R., hereto attached and made a part hereof, and in behalf of the State presents," etc., is in substantial compliance with the statute. Overruling Thompson v. State, 15 Texas Criminal Appeals, 39.

ON MOTION TO RETAX COSTS.

**5. · Fee of Attorney-General, and Clerk's Fee for Issuing, and Fee for Return of Execution.**

On a motion to retax costs upon an execution issued by the clerk of the Court of Criminal Appeals against appellant and his sureties, Held, the fee of·the Attorney-General ($10) and the fee of the clerk ($10), together with the fees for issuance ($1) and return of execution ($1) are legitimate items of cost against appellant and his sureties where the judgment has been affirmed; and that to enforce the collection of said first two named items, the clerk of the Court of Criminal Appeals is authorized to issue execution as in civil cases, and the fees for the issuance and return of the execution are legitimate items of cost to be also paid by appellant and his sureties.

APPEAL from the County Court of Montague County. Tried below before Hon. LEVI WALKER, County Judge.

Appeal from a conviction for unlawfully and willfully pulling down and injuring the fence of another; penalty, a fine of $10.

The sufficiency of the information was attacked by a motion in arrest of judgment, which was overruled. This motion is fully disclosed by the opinion, which also contains a sufficient statement of the case.

J. M. Chambers, for appellant, as to the insufficiency of the information, cited Prophit v. State, 12 Texas Crim. App., 233; Allen v. State, 13 Texas Crim. App., 28; Warren v. State, 17 Texas Crim. App., 207; Johnson v. State, 17 Texas Crim. App., 230; Thompson v. State, 15 Texas Crim. App., 39.

*Mann Trice*, Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—The appellant was convicted of unlawfully and willfully pulling down and injuring the fence of J. G. Reynolds, without the consent of said Reynolds, and his punishment assessed at a fine of $10.

The appellant asked two special charges, and took a bill of exceptions to the refusal of the court to give them.

The first special charge requested, in effect, told the jury that "if you believe that Reynolds agreed with the defendant to leave the question of location of the line between him and said Reynolds with the county surveyor of the county, and to move the fence on the line located by him, and that such line was located, and that the defendant took down the fence for no other purpose than to place it on said line, then he would not be guilty, and you will acquit the defendant." In answer to this proposition, it will be sufficient to state that the testimony does not show that there was any agreement entered into that the said fence should be moved onto said line, even if it be conceded that there was an agreement that such a line might be run.

In the second bill of exceptions, it is shown that appellant requested the court to instruct the jury that "if Reynolds moved his fence back to the line as claimed by the defendant, and left the disputed strip in possession of the defendant, then Reynolds would have no right to again rebuild the fence within the defendant's possession against defendant's consent; and, if you find such to be the facts in this case, then you will acquit the defendant."

The testimony for the State in this cases shows that the fence for the pulling down of which the defendant was convicted was on the line between appellant's survey and Reynolds' land. The testimony of the appellant showed that said fence was some thirty varas from said line, and that he pulled down the said fence, and moved it out on said true line. With reference to the last special charge above mentioned, the testimony of the defendant himself showed that, after Reynolds bought the Henry survey, he notified him to move the old fence down on the line run by the surveyors for Johnson and Henry; and that Reynolds moved the fence back to the line, and it remained there two or three years; and that he subsequently, without the consent of the appellant, moved said fence line back some thirty varas, to where it originally stood; and that it remained there three or four years.

It appears from the undisputed testimony in this case that the prosecutor, Reynolds, never agreed or consented to the removal of said fence back to where appellant claims it had formerly been built, but was opposed thereto, and, since the time of its said removal (if, in fact, it had ever been moved down from where it originally stood, as appellant claims), that the prosecutor, Reynolds, had for two or three years held quiet, peaceable, and uninterrupted possession of the fence and all of the land that it inclosed; and, in this condition of things, appellant had no

right, without his consent, to pull down and remove said fence. So the said special instruction asked on this phase of the case was not the law.

On this branch of the case the court instructed the jury as follows: "If you believe from the evidence that the land on which the fence charged to have been torn down was land belonging to the defendant, and that the fence had been placed there by Reynolds after being notified by the defendant to not place the fence there, then you will acquit the defendant. Or if you have a reasonable doubt as to whether or not it is defendant's land, or whether it was placed there over the objection of defendant, then you will acquit." This charge, in effect, told the jury, if the land belonged to the defendant, and the fence had been placed there or rebuilt there by Reynolds after being notified by the defendant not to place it there, to acquit the defendant. In our opinion, this charge goes even further than is warranted by the law. We do not regard this statute as predicated upon or controlled by the ownership of the land, but rather to protect the actual possessor of the land and the owner of the fence. The evidence in trials of this character should be confined to the actual, quiet, and peaceable possession of the land, and should not extend to the rightful possession of the same. See Behrens v. State, 14 Texas Crim. App., 121; Carter v. State, 18 Texas Crim. App., 573; Jenkins v. State, 7 Texas Crim. App., 146.

Appellant filed a motion in arrest of judgment, on the ground that the information does not show that it was presented into court by the county attorney. The language of the information on this subject is as follows: "Now comes John P. Slayton, county attorney of Montague County, Texas, upon affidavit of J. J. Reynolds, hereto attached and made a part hereof, and, in behalf of the State, presents into the County Court of Montague County," etc. Appellant claims that this information is substantially similar to the information in the case of Prophit v. State, 12 Texas Criminal Appeals, 233, and Thompson v. State, 15 Texas Criminal Appeals, 39. He also cites Johnson v. State, 17 Texas Criminal Appeals, 233, as in point. We have examined said cases, and while the language used in neither is exactly like the language cited above, yet they are all somewhat in point. The case of Thompson, above referred to, approximates nearest to the language here used. We are inclined to differ from the learned judge who rendered the opinion in said last mentioned case. Code Crim. Proc., article 466, which lays down the requisites of an information, in subdivision 3 requires that "it appear to have been presented by the proper officer." Subdivision 9 requires that "it shall be signed by the district or county attorney officially." We believe the language in the information above cited in this case complies substantially with these requisites in the respects indicated, and the court did not err in overruling the motion in arrest of judgment.

*Affirmed.*

DAVIDSON, Judge, absent.

The following motion to "reform the judgment and recall execution," was filed by appellant April 1, 1897:

"Now comes the appellant, Thomas Arbuthnot, and, joined by J. J. Barrett and J. M. Chambers, sureties on appellant's recognizance, aver to the court that the appellant was convicted in the County Court of Montague County of the offense of unlawfully injuring the fence of another, without the owner's consent, and on appeal to this court gave a recognizance, as the law requires, and on the 19th day of February, 1896, the judgment of the lower court was by this court affirmed, and as shown by the mandate returned to said County Court, this court entered the following order in said cause, to wit: 'It is further ordered, that the appellant Thomas Arbuthnot, as principal, and J. J. Barrett and J. M. Chambers, as sureties upon his recognizance, pay all costs in this behalf expended, and that this decision be certified below for observance.' That on the 7th day of March, 1896, the clerk of this court, upon said judgment, issued an execution to Montague County, directed against appellant and his said sureties, commanding the sheriff of said county to make the amount of the costs in this court out of the property of appellant and his said sureties. Appellant and his said sureties further say that no forfeiture of his said recognizance has ever been had, and that appellant has not broken the conditions of said recognizance, but has and is now in all things complying with same.

"Wherefore appellant and his said sureties ask this court to so modify its said order as that no judgment will be rendered against said sureties on said recognizance, and they further ask the court to recall the execution issued upon said judgment against the said sureties."

The following amended motion was also filed: "Now comes the defendant, Thomas Arbuthnot, and his sureties, J. J. Barrett and J. M. Chambers, and file this their amendment to their motion heretofore filed, asking for a correction of the judgment, and ask the court to reform the judgment so that only the $10 due the clerk be adjudged against the sureties, and they ask that the cost be retaxed so as to eliminate from the bill the two items of $1 each for issuance and return of the execution, as same is now taxed."

*J. M. Chambers*, for the motion.—The judgment awards execution against the sureties on the recognizance for the cost due the clerk of the Court of Criminal Appeals and also due the Attorney-General. The clerk also charged a fee for issuing execution.

Article 1119, new Code of Criminal Procedure, prescribes the cost due the Attorney-General.

Article 1120, new Code of Criminal Procedure, prescribes the cost due the clerk.

Article 1121 provides for these fees to be collected as in other cases. In other cases the fees are collected by remanding the convict to jail until the fine and costs are paid, and by issuing execution against him.

Article 1122 is an amendment made by the act creating the Court of Criminal Appeals. It adds a new condition to a recognizance, in that it makes the sureties bound for the costs due the clerk of the Court of Criminal Appeals. Can it be said that the costs "due the clerk" are costs due the Attorney-General? If so, then it could be said that costs due the county attorney are costs due the county clerk.

Under the law prior to the enactment of this article, the sureties were only bound for the appearance of the defendant, etc. Conner v. State, 30 Texas, 94; Weaver v. State, 43 Texas, 386. A forfeiture of a recognizance can not be had in the appellate court, but article 1122, Code of Criminal Procedure, does authorize execution for cost due the clerk, even though no such condition is in the recognizance.

As to the cost of the issuance of the execution, article 1071 provides: "No item of costs in a criminal action or proceeding shall be taxed that is not expressly provided for by law." I ask, where is the law expressly providing for costs for issuing execution by clerk of the Court of Criminal Appeals? What is the fee for such a writ?

I most respectfully submit that the sureties on a recognizance are only liable for ten dollars, to the clerk of the appellate court, and for the appearance of the defendant in the court below, and therefore ask that the judgment be corrected as prayed for in the motion.

### ON MOTION TO RETAX THE COSTS.

HENDERSON, JUDGE.—This is a motion to retax the costs in said case, which was appealed from Montague County, and affirmed at a former term of this court, and, as ancillary to this motion, there is also an injunction granted by the district judge of the Sixteenth Judicial District. The items of cost are clerk's fee, in this court, $10; Attorney-General's fee, $10; issuing writ of execution, $1; and the return thereon, $1—making in all $22. The clerk of this court issued an execution for said costs, $10 was paid to the sheriff of Montague County as the costs of the clerk of this court, and the balance of $12 the appellant and his sureties refused to pay, claiming that the same was not legitimate costs, for which appellant and his sureties were bound on the recognizance executed in the court below. Appellant insists, in this connection, that article 1071 of the Code of Criminal Procedure of 1895 only authorized costs which are expressly provided for by law, and that the Attorney-General's fee of $10, and the cost of issuing the execution and return thereon ($2), are not provided for by any statutory law; at least that there is no provision making the sureties on appellant's recognizance liable for such costs. By reference to article 1119, chapter 4, Code of Criminal Procedure 1895 (which chapter has reference to costs to be paid by defendant), it will be seen that the Attorney-General, in every case of misdemeanor in which the judgment of the court below is affirmed by the Court of Criminal Appeals, is allowed the sum of $10. Article 1120 authorizes the clerk also to receive

38 Texas Crim. App.—33

a fee of $10, which is couched in similar language as the preceding article. Article 1121 authorizes the fees named in the preceding sections to be taxed against the defendant and collected as in other cases. Article 1122 specially provides that, when the judgment of the court below is affirmed against a defendant, the fees of the clerk of said court shall be adjudged against the defendant and his sureties on his recognizance, for which execution shall issue, as in other cases of appeal to the Court of Criminal Appeals. It is contended that, because this article provides as to how the fees of the clerk shall be taxed and collected, it excludes the idea that the fee of the Attorney-General can be taxed and collected in the same manner; and, if the fee of the Attorney-General is collectible at all, it must be collected from the defendant by proceedings in the court below, as provided for in the collection of costs in said court, and that the defendant alone is responsible for such costs.

We do not so understand this matter. The fee of the Attorney-General is as much the costs accruing in the Court of Criminal Appeals as the clerk's fees, and is expressly provided for by the statute above quoted. It is costs accruing solely in the Court of Criminal Appeals, and depends upon one of two propositions—either that the judgment is affirmed or appeal is dismissed. As said before, article 1121 provides for taxing of costs of the Attorney-General and of the clerk against the defendant; and for their collection as in other cases. These costs pertain to no other court but this, and we know of no other place where they can be taxed, and no other tribunal authorized to collect such costs. The recognizance given on appeal to this court expressly provides that the defendant shall abide by the judgment of the Court of Criminal Appeals. We hold that the fee of the Attorney-General, as well as the fee of the clerk, is a legitimate item of costs against the appellant and the sureties on his recognizance. We further hold that, to enforce the collection of these items of costs, the clerk of this court is authorized to issue an execution, and that he is entitled to the same fee therefor, as well as the return thereon, as is provided in civil cases.

We accordingly overrule the motion to retax the costs, and authorize the clerk of this court to issue an execution for the amount of the costs uncollected.

*Motion overruled.*