Appeal from District Court, Burleson County; Ed R. Sinks, Judge.

Maria Cole was convicted of assault with intent to maim, and she appeals. Affirmed.

Jesse Garrett, L. O. Fraim, and Batte & Minkert, for appellant. C. E. Lane, Asst. Atty. Gen., for the State.

HARPER, J. Appellant was convicted in the district court of Burleson county under an indictment charging her with an assault in and upon one Jim Hadley, with the intent of maiming the said Jim Hadley by attempting to cut off his penis, and her punishment was assessed at confinement in the penitentiary for a term of two years.

The evidence offered in behalf of the state shows that the injured party, Jim Hadley, and the defendant, had been very intimate, and had been having carnal intercourse with each other for some time; that Jim Hadley had ceased paying attention to the defendant, and had taken up with another negro woman by the name of Hattie Tarkel; that upon the day of the injury he went by the house of the defendant and engaged in conversation with her; that defendant requested Hadley to come back to her house that night and go into the woods with her for the purpose of having carnal intercourse; that he did go back, and with the defendant went about a mile from defendant's home; that they laid upon the ground and had two acts of carnal intercourse; that the defendant then asked Hadley if he still had the Tarkel woman for his sweetheart, and asked him how long it had been since he had been with her; that Hadley replied that he had been with her about two weeks prior thereto; that while defendant was rubbing him she took a razor and nearly cut off his penis, and said to him: "Now go take Hattie Tarkel!" The defendant testified in her own behalf that the reason she cut Hadley's penis was that he was trying to rape her.

Article 604 of the Penal Code of 1895 reads: "If any person shall assault another with the intent to commit the offense of maiming, disfiguring or castration, he shall be punished by a fine not exceeding $1,000 or by imprisonment in the penitentiary not less than two nor more than five years." Maiming under our statute, as applicable to this case, is defined to be the willful and malicious intent of depriving a person of any member of his body.

The appellant requested no special instructions, and the court correctly charged the jury the law applicable to this case. There is no motion for a new trial in the record, but there is a motion to quash the indictment, which the court overruled. The indictment is in the language of the statute, and informed defendant of the nature of the offense of which she was charged, and is in the language of Willson's Criminal Forms, and the court did not err in overruling the motion.

There are two bills of exception in the record in regard to the admissibility of certain testimony, showing intimacy between defendant and the injured party. Appellant justified her conduct on the theory that the prosecuting witness had attempted to commit the offense of rape on her, and denied ever having had carnal intercourse with the witness. The prosecuting witness denied the assault, and testified to numerous acts of carnal intercourse with her, and that the night the offense is alleged to have been committed he went at her request to an appointed place, and twice had sexual intercourse with her prior to the commission of the alleged offense. The testimony objected to, we think, was admissible on the question of whether or not her statement was true that she had never had carnal intercourse with the injured party and that he attempted to ravish her.

The judgment is affirmed.

---

FITZSIMON v. STATE.

(Court of Criminal Appeals of Texas. May 24, 1911.)

FENCES· (§ 28*) — REMOVAL — CRIMINAL RESPONSIBILITY.

It is not criminal for one in the actual quiet and peaceable possession of land upon which there is a fence to remove the fence, though his possession be unsupported by legal title.

[Ed. Note.—For other cases, see Fences, Dec. Dig. § 28.*]

Appeal from Medina County Court; H. E. Haass, Judge.

John T. Fitzsimon was convicted of unlawfully pulling down and injuring the fence of a third person, and appeals. Reversed and remanded.

Lytle & Brown, for appellant. Geo. Mendell, Jr., and C. E. Lane, Asst. Atty. Gen., for the State.

HARPER, J. Appellant was prosecuted in the county court of Medina county on a complaint and information charging him with unlawfully breaking, pulling down, and injuring the fence of Leo Tschirhart, without the consent of the said Tschirhart. Upon a trial he was convicted, and his punishment assessed at a fine of $10. This is the second appeal in this case; this case having been reversed on the former appeal (128 S. W. 903) because of the refusal of the court to admit certain testimony, which the court admitted on this trial.

Mr. Tschirhart owned 35 feet off of lots 3 and 4, in block 4, in the town of Castroville. The defendant owned all of lots 5, 6, 7, and 8, in said block. It appears that some 30

---

years ago one Tarde owned all of the block, and lived on that portion now owned by defendant. He sold to a man named Geyer lots 3 and 4, who erected a partition fence. This fence had remained there during all these years. About 12 years prior to the institution of this prosecution defendant purchased the property he now owns, and during these years he has kept this fence in repair. Kilhorn purchased a part of lots 3 and 4, originally purchased by Geyer, and resided thereon. The Knights of Honor purchased the remainder of lots 3 and 4, and owned it until about three months before the institution of this prosecution, when it was purchased by Tschirhart. When Tschirhart purchased the lots from the Knights of Honor, he claimed the fence, on the ground it was erected by Geyer when he purchased lots 3 and 4, some 30 years prior to this date. Kilhorn testified that he was a trustee in the Knights of Honor lodge when it owned the lots now owned by Tschirhart and had the lots in his inclosure, and when the lodge owned the lots it did not claim the fence; but he had always understood that the fence belonged to defendant and those under whom he claimed, that defendant was in possession of the fence, and kept it in repair. No houses were on the Tschirhart lots, while defendant lived on his lots, and had recently erected a hotel thereon.

From the evidence it is probably true that the fence was erected by those under whom Tschirhart claims, but for 12 years they had left it to defendant to keep in repair, and for this length of time, he testifies, he claimed it as his own, and thought it belonged to him, and no one had contended otherwise until Mr. Tschirhart purchased a portion of lots 3 and 4, some three months prior to the institution of this prosecution. Defendant, after building his hotel, says he desired to build a new division fence, and put men to work doing so, when Mr. Tschirhart stopped them, and caused his son to nail on planks, closing up that portion torn down by defendant's employés. Defendant went to work to put in a post on which to hang a gate, when Mr. Tschirhart approached and they had some words over the fence. Defendant again tore down the planks which the son of Tschirhart had nailed up, when Mr. Tschirhart filed a complaint against him.

It appears that, in the trial of this case, the issue in the trial court was mainly who rightfully owned the land on which the fence was situate, not who was in possession of the fence, and in consequence who rightfully owned the fence by reason of ownership of the land. In the case of Behrens v. State, 14 Tex. App. 121, Judge Hurt, speaking for the court, holds: "In instructing the jury upon the subject of possession of the fence, the court below gave this charge: 'The title to the land is not a question for your consid-

eration, only so far as to show to whom belongs the rightful possession of the fence.' To this charge defendant excepted. There being no statement of facts, can this court, conceding the charge to be erroneous, reverse the judgment because of said error? If the charge is inapplicable to any state of facts, being excepted to at the time, we are left no alternative but to reverse. Code Cr. Proc. 1879, art. 685. Could there be a state of facts to which this charge would apply as the law governing the same? We think not. The rule upon this subject is stated in Johnson v. State, 7 Tex. App. 146. It is as follows: 'The inquiry in regard to the possession should be confined to the question of the actual, quiet, and peaceable possession, and not the rightful possession of the fence.' " See, also, Carter v. State, 18 Tex. App. 573; Arbuthnot v. State, 38 Tex. Cr. R. 511, 34 S. W. 269, 43 S. W. 1024.

It appears from the evidence in this case that defendant was in possession of the fence, and had been for 10 or 12 years, whether he was the rightful owner or not. It may be that Tschirhart is the rightful owner of the fence, but this question we do not determine in this character of a case. Under the law as laid down in the cases above quoted and cited, the evidence in this case does not sustain the conviction, and we deem it unnecessary to pass on the other questions raised.

Reversed and remanded.