## HARLEY SLOAN v. THE STATE.

### No. 3241.   Decided October 21, 1914.

**1.—Gaming—Sufficiency of the Evidence—Knowingly Remaining at Place of Gaming—General Verdict.**

Where, upon trial of playing at a game of cards, and going into and knowingly remaining at a place where a game of cards were being played, not a private residence occupied by a family, the evidence was insufficient to convict defendant under the first count, but sufficient to authorize the jury to find him guilty of the offense of being present, knowing that a game of cards were being played at said place, the conviction was sustained, the verdict being general. Distinguishing Fallwell v. State, 48 Texas Crim. Rep., 35.

**2.—Same—Evidence—Agreement—Charge of Court.**

Where several defendants were on trial for gaming, and the State and the defendant agreed to submit the cases of all the defendants, the admission of evidence which was admissible against one of the defendants was not reversible error, in the absence of a requested instruction to confine the same to a certain defendant against whom it had been admitted.

**3.—Same—Private Residence—Family—Sufficiency of the Evidence.**

The object of the statute is to protect the sanctity of the home, and, therefore, exempts the members of the family from prosecution, and where the defendants were not constituent members of the family, and all the members of the family were absent from home, yet could not play at a game of cards betting money thereon, although they may have had permission to engage in a game of dominoes, and where defendant, at least, went into and remained in such place while such gambling took place, the conviction was sustained.

**4.—Same—Allusion to Defendant's Failure to Testify.**

Where the argument of State's counsel was not such a direct or indirect reference to the failure of defendant to testify as would necessitate a reversal of the case, there was no reversible error.

Appeal from the County Court of Hall. Tried below before the Hon. Jno. D. Bird.

Vol 75 Crim.-3.

Appeal from a conviction of knowingly going into and remaining at a place where a game of cards was being played which said place was not a private residence occupied by a family; penalty, a fine of $25.

The opinion states the case.

*Moss & Leak,* for appellant.—On question of insufficiency of the evidence: Fallwell v. State, 48 Texas Crim. Rep., 35, 85 S. W. Rep., 1069; Hale v. State, 90 S. W. Rep., 654; Ables v. State, 92 S. W. Rep., 414; Bowen v. State, 69 Texas Crim. Rep., 243, 153 S. W. Rep., 306; Looper v. State, 56 Texas Crim. Rep., 498, 120 S. W. Rep., 880; Thomas v. State, 146 S. W. Rep., 878; Purvis v. State, 62 Texas Crim. Rep., 302, 137 S. W. Rep., 701; Scott v. State, 69 Texas Crim. Rep., 615-616, 155 S. W. Rep., 226; Walters v. State, 58 Texas Crim. Rep., 240, 125 S. W. Rep., 11.

On question of admission of evidence against one defendant: Menges v. State, 9 S. W. Rep., 49.

On question of allusion to defendant's failure to testify: Washington v. State, 77 S. W. Rep., 810; Wallace v. State, 81 S. W. Rep., 966; Brazell v. State, 26 S. W. Rep., 723; Dawson v. State, 24 S. W. Rep., 414.

*C. E. Lane,* Assistant Attorney General, for the State.

HARPER, JUDGE.—Appellant was prosecuted and convicted under an information containing two counts, one charging him with playing at a game of cards at a place other than a private residence occupied by a family, and the other charging him with knowingly going into and remaining at a place where a game of cards was being played, which said place was not a private residence occupied by a family, the appellant then and there knowing that said game was being played. The court submitted both counts to the jury, and a general verdict was returned finding him guilty.

J. E. King, sheriff of Hall County, testified that on Sunday night, April 12th, he went to the house of Henry Cantrell about 8:30 o'clock; he could see a light in the room, but the windows had quilts spread over them and witness could not see in the room. That while standing there he could hear cards flipping, money rattling, and heard one party say he would open it for one dollar, and heard Farley say he would raise it, and he asked how many cards do you want. That he recognized the voices of Farley and McCanne, but did not recognize the voices of the others talking. That he broke into the house, and Farley, Alexander and Stallings were around the table, on which a quilt was spread. Sloan and McCanne were on the bed; and he found a deck of cards between the mattresses on this bed, where he saw McCanne put something as he came into the room. On Monday following Farley had told him, when Alexander was present, that certain of the boys were not playing.

W. H. Lindsey, chief of police of Memphis, testified that he was with

the sheriff, and testifies to finding the house with a light in it and quilts over the windows, etc., and says he could hear the cards being dealt, the money rattling, and could hear talking in the room; that he heard someone say, "I'll open it for a dollar," and heard Jess Farley say, "I'll raise you a quarter." Jess Farley asked how many cards he wanted, and the answer was "one." That they stayed outside and listened for about thirty minutes, when they broke in. That Farley, Alexander, McCanne, appellant and Stallings were in the room. That none of these five men lived at this house. He also testified to finding the cards, and that the bed was alongside of the table, and a man could sit on the bed and be right against the table. That he heard money rattling and the shuffling and dealing of cards as plain as if he looked right at them.

Appellant earnestly insists that this evidence is insufficient to sustain a conviction against this defendant. If there was only one count in the information, that is, appellant was playing at a game with cards, his contention would be sound, for the testimony is perhaps insufficient to sustain a conviction against any of the five for playing cards other than Jess Farley and one other. But the testimony, we think, conclusively shows, or at least the circumstances are such that would authorize a jury to find that a game of cards was being played in this room, and that appellant was present knowing that it was being played, and as one of the counts charges him with "knowingly going into and remaining at a place where a game of cards was being played, which place was not a private residence occupied by a family, he then and there knowing that said game was being played," the evidence will sustain a conviction under this count, unless it should be held that the place where the game was being played was a private residence occupied by a family at that time. The evidence would justify a jury in finding that a card game had been going on for at least a half hour, and that appellant was present during all that time.

Appellant refers us to some six cases, under the holdings of which he claims that the evidence is insufficient to sustain the verdict, the principal one upon which he seems to rely being Fallwell v. State, 85 S. W. Rep., 1069. In that case no one heard Fallwell's voice making any remark that would indicate he was in the game. It was the voice of Pearce that was heard to say "give me three cards," and if Pearce's case had been on appeal, there would have been no holding that the evidence was insufficient. So, in this case, if appellant was only charged with playing cards, then the Fallwell case would be in point, and he should have been acquitted; but appellant in this case is also charged with knowingly going into and remaining at a place where a game of cards was played, and the verdict, being general, can and should be applied to that count in the information. Isaacs v. State, 36 Texas Crim. Rep., 505; Shuman v. State, 34 Texas Crim. Rep., 69.

It is also urged that the court erred in permitting Sheriff King to testify that in a talk with Farley, Farley had said that certain of the boys did not play; that Alexander was standing near. If appellant had

been alone on trial, his objection should have been sustained, and it would have been error not to have done so. But the record discloses "that in this case the State of Texas and defendants agreed to submit the cases of all the defendants for your consideration." As the cases against four defendants, including Alexander, were tried at one time, the evidence was admissible against Alexander, and being admissible against him, the court did not err in overruling the objection. It would have been proper to have instructed the jury that they should not consider such testimony in passing on the guilt or innocence of Stallings, Sloan and McCanne, as it was a remark made after the commission of the offense (if an offense was committed), out of the presence of these latter three, but this being a misdemeanor, no request being made that such instructions be given, it was not incumbent on the court to give such charge, or any charge to the jury. Art. 719, White's Ann. Code of Criminal Procedure; Waechter v. State, 34 Texas Crim. Rep., 297; Killman v. State, 2 Texas Crim. App., 222; Carr v. State, 5 Texas Crim. App., 153; Hobbs v. State, 7 Texas Crim. App., 117; Murray v. State, 38 Texas Crim. Rep., 677.

This brings us to the most serious question in the case. Henry Cantrell testified that he was a married man, and that he had been living at this house since February 1st last, the game of cards being alleged to have been played on the night of April 12th. He further testified that he and his wife were not at home on the date the game of cards was played—that his wife had been out at her mother's for about two weeks, and he had gone out there on Saturday before returning Monday, the game of cards having been played on Sunday night, while he was at his mother-in-law's home. He further testified that he had given the boys permission to go to his home and play dominoes. Under our statute it is no offense to play cards at a private residence occupied by a family, unless commonly resorted to for gaming, and appellant earnestly insists that the house where this card playing took place was the private residence of Henry Cantrell, and within the meaning of the law was at the time occupied by a family. On the proper construction of this statute depends whether or not this conviction should be sustained. As applicable to this case article 548 of the Penal Code reads: "If any person shall play at a game of cards at any place except a private residence occupied by a family, he shall be fined not less than ten dollars nor more than twenty-five dollars, provided the provision that permits gaming at a private residence shall not apply if the residence is one commonly resorted to for gaming." What was the object, intent and purpose of the Legislature in so providing? It was to exempt the members of a family from prosecution should they see proper to engage in a social game of cards, and the exemption carried with it exemption for such of their neighbors and friends as they might invite into their home to engage in a game with them. The number of times such games might be played is not the sole criterion to judge whether or not it was commonly resorted to for gaming. A man might have his neighbors and friends in his home frequently to engage in a social game of cards

with him, if their object and purpose was not to engage in what might be termed as gambling for money—that being the main purpose—and violate no law. The statute was to protect the sanctity of the home, and let each member of society seek pleasure and enjoyment in this manner if he saw proper in his own home. But if a man were to throw the doors of his home open to any and all who desired to enter therein for the purpose of gambling with cards, and it was so known, it would not be the number of times that cards were played that would make it a common resort, but the fact that he had opened his doors for any and all persons to gamble with cards which would evidence a violation of the law. Of course, evidence that this was continuously or frequently done would add additional strength to the evidence, but under the exemption in the statute no person is authorized to open his doors to the public at large indiscriminately for the purpose of gambling with cards. A man, his friends, and invited guests may engage in social games of cards in his home and violate no law, but no man can make a gambling house out of his residence and escape the penalty of the law, and each case must stand upon the facts and circumstances in that case. In this case these young gentlemen go to the house of Mr. Cantrell, when they know that all members of the family are absent from home, and apparently go there because of this fact. Mr. Cantrell says he gave them permission to go there and engage in a game of dominoes, but there is not the slightest intimation in the record that he invited them, or gave them permission to go to his home and for the time being turn it into a gambling room and engage in playing cards, betting money thereon. They sought nor asked no such permission, and the fact they knew they had no permission to do so is evidenced by the fact that they closed the doors and spread quilts over the windows and other openings that they might not be seen while engaged in this unlawful gambling. Having obtained permission to enter this house by false pretenses, it was the same as though they had no permission and they became mere naked trespassers. It was not the intent of the Legislature to exempt such game from the provisions of the law, and such construction would do violence to the whole spirit and intent of the statute. They going to this house when they knew Mr. and Mrs. Cantrell were absent from home, and without permission, and without the knowledge of Mr. and Mrs. Cantrell, to deliberately engage in gambling with cards, the persons who did so would violate the law, for such house at such time and under the circumstances herein shown would not be a private residence occupied by a family within the spirit and intent of the law. And as the evidence—circumstantially at least—amply sustains a finding that at least Farley and another member of the party were engaged in gambling with cards on this occasion, and that appellant at least knowingly went into and remained in this place while such gambling took place, we will not disturb the verdict. If either of the young men had resided at this house and invited the others to engage in the game with him, we might arrive at a different conclusion, but none of them lived at this house, and had selected a time to go there and

engage in this game when they knew that the occupants of the house were absent and it was being occupied by no family at that time. For further discussion see Stallings v. State, decided at this term of court.

The only other contention in the record is that State's counsel referred to the failure of defendant to testify in his address to the jury, when he said, "that the testimony of the witness Cantrell was all the testimony that the defendant had brought to contradict the State." This is a mere recitation of a fact, and it would have to be a strained construction that would make it refer to the failure of the defendants to testify, for Mrs. Cantrell and perhaps a number of other persons could have been called who could have testified to the same facts as did Mr. Cantrell, if true. Again it is contended that when he said, "Surely these defendants were not up there perpetrating a joke on the officers. Up there housed in as they were with a quilt over the window and the ·door latched—surely they were not there to perpetrate a joke on the officers. And, gentlemen, they brought no evidence that it was a joke." Doubtless these remarks were made in reply to argument of counsel for the defense, but if not it is not such a direct or indirect reference to the failure of defendants to testify as would necessitate a reversal of the case. If they were in fact perpetrating a joke there might be a number of ways this could be shown without either of them being called to testify. The record does not exclude such fact.

After careful consideration we have come to the conclusion that the judgment should be affirmed, and it is accordingly so ordered.

*Affirmed.*