### W. A. WILSON V. THE STATE.

No. 9752.    Delivered April 14th, 1926.

**1.—Gaming—Charge of Court—Defining Private Residence—Incorrect.**

Where, on a trial for playing and wagering on a game with cards at a place then and there not a private residence occupied by a family, the court instructed the jury that the private residence must be actually and physically occupied by a family at the very time the betting or wagering at a game of cards is in progress, before gaming is exempted therein. This charge was not a correct presentation of our gaming statute.

**2.—Same—Private Residence—Statute Construed.**

To come within the meaning of the term "private residence occupied by a family," there must be some constituent of a family, such as would be sufficient to come within the meaning of the word family as used in the homestead law, occupying such premises. See Branch's P. C., Sec. 1168. Following Williams v. State, 48 Texas Crim. Rep. 327 and other cases cited. Distinguishing Stallings v. State, 170 S. W., 160; Sloan v. State, 170 S. W., 156.

**3.—Same—Evidence—Held Insufficient.**

The uncontradicted evidence in this case disclosing that appellant played and bet at a game with cards at the private residence of Jack Rutherford, which was shown to have been occupied by himself, his wife and children, although at the time of the playing his wife and children were away from home on a visit and had been away from home for about three weeks, Rutherford occupying and using the home as his residence during their absence. We are of opinion that the temporary absence of the wife and children did not destroy the status of the residence, as that of one occupied by a family, and the conviction was not warranted.

Appeal from the County Court of Donley County. Tried below before the Hon. J. R. Porter, Judge.

Appeal from a conviction for gaming; penalty a fine of $50.

The opinion states the case.

*Cole & Simpson* of Clarendon, for appellant.

*Sam D. Stinson,* State's Attorney, and *Robert M. Lyles,* Assistant State's Attorney, for the State.

BERRY, JUDGE.—The offense is gaming, and the punishment is a fine of $50.00.

The only counts in the information which were submitted to the jury were counts one and two. By count No. 1 it was charged that appellant played at a game of cards at a place then and there not a private residence occupied by a family; and by count No. 2 it was charged that appellant did bet and wager at a game of cards at a place then and there not a private residence occupied by a family.

The undisputed facts in the case show that the house at which the game was played was a private residence and that Jack Rutherford and his wife and children lived in said house. That on the night in question Mrs. Rutherford and the children were away from home on a visit and had been away on said visit since about the middle of July and his offense was alleged to have been committed on August 8, 1925, but Rutherford was at home while the game was being played and consented thereto.

There was no contested issue in the case that the house where the playing took place was a private residence. The only contested issue was as to whether it was occupied by a family at the time the offense was alleged to have been committed. In submitting this issue the learned trial judge instructed the jury as follows:

"A family within the meaning of the gaming statute as above quoted is defined as follows, 'a family is the collective body of

persons who live in one house or under one head or manager or household,' and you are further instructed Gentlemen of the Jury, 'that it is not the private residence that protects the gaming from being unlawful, but it is the fact that the residence is at the time occupied by a family—not that some family makes it their residence—but for the time is away.' In other words the private residence must be actually and physically occupied by a family as that term has been hereinabove defined for you, at the very time the betting or wagering at a game of cards is in progress before gaming is exempted therein."

Many pertinent objections were levelled at this charge and especially that portion of it defining what constitutes a family. The charge under the undisputed facts in this case was clearly erroneous. The definition given of what it takes to constitute the occupying of a residence by a family under our gaming statute was taken largely from the case of Stallings v. State, 170 S. W. 160. If the correctness of the Stallings case, supra, and of the Sloan case, 170 S. W. 156, be conceded it seems clear to us that they do not control the question as raised by the facts in the instant case. In each of these cases all of the constituent elements of the family were absent from the home at the time the game of cards was played. In fact the owner of the house in those cases testified that he gave the parties permission to engage in a game of dominoes in his home but, as stated by Judge Harper in the Sloan case, supra, "there is not the slightest intimation in the record that he invited them or gave them permission, to go to his home and for the time being turn it into a gambling room and engage in playing cards, betting money therein."

Further reviewing the question, Judge Harper said:

"Having obtained permission to enter this house by false pretenses, it was the same as though they had no permission, and they became mere naked trespassers. It was not the intent of the Legislature to exempt such game from the provisions of the law, and such construction would do violence to the whole spirit and intent of the statute. Their going to this house when they knew Mr. and Mrs. Cantrell were absent from home, and without permission, and without the knowledge of Mr. and Mrs. Cantrell, to deliberately engage in gambling with cards, the persons who did so would violate the law, for such house at such time and under the circumstances herein shown would not be a private residence occupied by a family within the spirit and intent of the law."

In the instant case, we have an entirely different state of facts. The owner of the residence was present, actually at

home at the time the gaming occurred. His wife, however, was temporarily visiting away from home and it is clear that her absence from home was merely temporary.

We think the rule as to what constitutes a private residence occupied by a family is stated very clearly by Mr. Branch in Section 1168 of his P. C.

"To come within the meaning of the term 'private residence occupied by a family' there must be some constituent of a family such as would be sufficient to come within the meaning of the word 'family' as used in the 'homestead law.'" Citing Williams v. State, 48 Texas Crim. Rep. 327; 87 S. W. 1155. Patterson v. State, 55 Texas Crim. Rep. 393; 116 S. W. 1151. Robbins v. State, 57 Texas Crim. Rep. 8; 121 S. W. 504.

While there seems to be no case in this state where the exact question here presented has been decided, yet we think it clear from the reasoning of the authorities above cited as well as many others that might be collated that it was not the intent of the Legislature to make the mere temporary absence of one member of the household a sufficient showing to deprive the residence of the character of being occupied by a family.

We are not satisfied that the holding in the Stallings case and the Sloan case, supra, to the effect that a mere temporary absence of all members of the family would be sufficient to divest the residence of the characteristic of being occupied by a family. Beard v. State, 101 S. W. 796. But as the facts in this case do not clearly raise that question it is not necessary perhaps to discuss it. Whether the Sloan and Stallings cases, supra, be followed or not, we think it clear from the record in the instant case that there was no question but that the residence at which the gaming took place was a private residence and was actually occupied by a family. The authorities above cited support the proposition that if there is some constituent of a family which would be sufficient to invest the premises with the character of a homestead that this is sufficient to show occupancy. It would be folly to say that because the wife of Rutherford was temporarily visiting in another community at the time of this gambling that this within itself was sufficient to divest the premises of the homesetad character. We think the charge complained of should not have been given and if the facts on another trial of this case show beyond dispute that the wife of Rutherford was merely temporarily absent and that he was present and the parties were participating in this game with his knowledge and consent, then an instruction should be given to the effect that the premises in controversy was a private residence actually

occupied by a family as that term is defined in the gaming statutes.

For the error above discussed, the judgment is reversed, and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.