### SAM HINTON V. THE STATE.

No. 19937. Delivered April 19, 1939.
Rehearing Denied June 21, 1939.

354

The opinion states the case.

*E. T. Miller,* and *Simpson, Dorenfield & Fullingim,* all of Amarillo, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

GRAVES, Judge.
Appellant was convicted of keeping and exhibiting, for

the purpose of gaming, a gaming table and bank, and was assessed a penalty of two years in the penitentiary.

There was ample proof of the fact that appellant was banking a game of dice in a room back of the Crown Bar in Amarillo, Texas, and he was not entitled to his requested peremptory instruction of not guilty.

Appellant's second proposition complains of the court's refusal to give in charge to the jury the proposition that if the appellant was merely engaging in a gambling game in the same capacity as other members, who were only gambling and not banking the game, then he would not be guilty as charged in the indictment. The court charged the jury in his main charge as follows: "If you find and believe from the evidence that at the time and place alleged in the indictment any game was played, but if you further find and believe that the defendant played on the same basis as the other players in the game, whatever the game may have been, that is, that he was merely one of the players, and that he did not at any time keep or exhibit any gaming table or bank for the purpose of obtaining bettors, as those terms are hereinbefore defined, or if you have a reasonable doubt thereof, then you will acquit the defendant and say by your verdict not guilty."

It occurs to us that the court was fairly liberal in his charge, and such excerpts as above quoted gave the jury practically the same idea as was requested by appellant.

Bill of exceptions No. 2 complains of the following remarks of the State's attorney in his opening speech to the jury: "There was a time when it was only a misdemeanor to operate a gaming table, but later an incident occurred in Ft. Worth when a district attorney was shot, and the Legislature determined they would run the State and not the gamblers, and so a law was passed, making it a felony to operate for the purpose of gaming a gaming table and bank," because the same were . outside the record, not supported by the testimony and illegally prejudicial. Such was but a discussion of the reasons for the passage of the law under which prosecution was had, and no prejudice is reflected in the verdict of the jury. If the State's testimony is true, and there was no contradiction thereof, the appellant was clearly guilty, with no denial of such guilt, and he received the lowest penalty. If there was error, which we do not hold, it seems to have been harmless.

Appellant's bill of exceptions No. 3 complains of the remarks of the assistant district attorney as follows: "Utterback (re-

ferring to the State's witness, Utterback) and Schneider (referring to another of the State's witnesses) said they were at the Crown Bar and gambled with the defendant, and it is significant that not a soul has come here and said that was not so."

It was shown by said witnesses that there were many people present at the times testified to by them, and it occurs to us that such remarks did not necessarily refer to the appellant's failure to testify. Mr. Branch on page 209 of his Penal Code says: "A statement of the prosecuting attorney that no one had contradicted the witnesses for the State is not a reference to defendant's failure to testify where others than defendant could have testified to the facts," citing Sample v. State, 52 Texas Crim. Rep. 505, 108 S. W. Rep. 685; Sloan v. State, 170 S. W. Rep. 156.

Appellant's bill of exceptions No. 4 complains of the following remarks: "Where they (referring to defendant and others) shooting? They were shooting in the back of a saloon, the Crown Bar."

These remarks were objected to upon the ground that there was no evidence to show that the Crown Bar was a saloon, and that the defendant and others were shooting (dice presumptively) in the back of a saloon, and such remarks were outside the record, but we note from the record that no request was made by appellant to have the court instruct the jury not to consider said remarks. The place where this gaming was said to have taken place was called the "Crown Bar," and thus referred to many times. One witness testified that: "I entered the Crown Bar from Polk Street. When I entered the first door there was a bar in that room. The place where I shot in that building was in the back room." Webster's International Dictionary defines a bar, among other definitions, as a "barrier or counter over which liquors and food are passed to customers, hence, the portion of the room behind the counter where liquors for sale are kept."

Bouvier, in his Law Dictionary, Rawles third revision, does not define the word "Bar" but refers to the word "Saloon," and defines the same as "a place of refreshment * * * In common parlance the word is used to designate a place where intoxicating liquors are sold, and this restricted meaning may be given to saloons, where the context or other circumstances required it; but it does not necessarily import a place where liquors are sold. The word has a much broader meaning than dram shop. To constitute a saloon it is not necessary that ardent

spirits should be offered for sale, and that it should be a business requiring a license under the revenue laws of the State."

While this statement in the attorney's argument may have been inapt, and probably should not have been made, we can not see any such serious error as should cause a reversal of this case. The very name "Crown Bar," according to the authorities, is highly suggestive of the title "Saloon" as is shown by Bouvier's Dictionary, and the fact that they also had a bar in the Crown Bar leads us to think that such remarks were not so far off the record as to constitute any serious error.

In bill of exceptions No. 5 there is complaint relative to argument upon the part of the district attorney as to how a crap game was run, and as to what the appellant was doing in such crap game, etc. This argument seems to be based on testimony brought forth by the witnesses, and was a legitimate comment thereon.

Bill of exceptions No. 6 complains that the district attorney referred to appellant's failure to testify in that such attorney said in his remarks to the jury that defendant did not put a single witness on the stand to show that he (defendant) was shooting (dice) like all of the others. According to the witnesses, there were many others present and participating in the games, and such statement did not necessarily refer to the appellant's failure to testify, and we hold there was no error therein. See Branch's Penal Code, p. 209.

Appellant's bill No. 7 is an objection to the testimony of the witness Utterback because the facts testified to antedated the date alleged in the indictment, to-wit: November 1, 1937. The court charged the jury, as the law, that they had the right to go back any time within the three year law of limitation and convict the defendant for the charge laid in the indictment during such limitation period. Vernon's Ann. C. C. P. Art. 180. Such we understand the law to be. In 23 Texas Jur., p. 682, we find the following: "The State is not required to prove the exact date laid in the indictment or information, but may prove the offense to have been committed at any time prior to the presentment of the accusation pleading and within the period of limitation," citing a long list of cases.

Bill of exceptions No. 8 relates to the answer of the State's witness Utterback when asked as to what appellant was doing at the crap game, and the witness said: "He was paying off, I guess," same being objected to because it was an opinion, surmise, and conclusion of the witness, and invaded the pro-

vinces of the jury. Whereupon the trial court said to the witness: "You are not permitted to guess, Mr. Utterback. If you are only guessing at what he was doing, that is not admissible. If you know what he was doing you may state, or just tell what you saw going on. You are not permitted to guess at what a man is doing." Whereupon appellant's counsel excepted to the remarks of the court as being upon the weight of the evidence, and was an invasion of the province of the jury, and an intimation upon the part of the court that the court believed it was possible for the witness to state positively that appellant was paying off in said game.

This attempted criticism of the court's remarks we think was hypercritical, and not justified by the facts. He was merely doing what appellant's attorneys desired him to do, and we see no error reflected in such entire proceedings, especially in view of the further remarks of the trial court as follows: "Gentlemen of the Jury: This court is not expressing any guess or belief or any opinion or intimation as to anything. The court is simply telling the witness to state what he knows, if anything."

Bill of exceptions No. 9 is an objection to the answer of witness Utterback relative to his shooting certain chips that he had bought at a certain dice game, his answer being "I imagine I did." This witness was rather reluctant in the giving of his testimony, and answered in a somewhat evasive manner at times, and this isolated statement was but indicative of much of his testimony which finally eventuated in a positive statement relative to such matters. It will be seen from the remainder of his testimony that he was merely giving his best recollection of the matters as they occurred at the time he was being interrogated about. We do not think any serious error is reflected herein.

Bill of exceptions No. 10 relates to the testimony of Mr. Uselding wherein he testified that sometime prior to the date of November 1, 1937, be obtained access to the room behind the Crown Bar, where the present offense is supposed to have taken place, and observed persons gambling therein, and appellant was then present. This testimony was objected to by appellant's attorneys as immaterial, irrelevant, did not prove any material allegations in the indictment, was illegally prejudicial to the rights of the defendant, and it antedated by two years the offense alleged in the indictment.

It will be noted that the first count in the indictment charged

that the appellant was then and there keeping and was interested in keeping a certain building, room and place for the purpose of being used as a place to bet and wager, and to gamble. with dice then and there played, and as a place where people did then and there resort to gamble, bet and wager on games played with dice.

True it is that when the case was finally submitted to the jury, such first count was eliminated by the court in its charge, but at the time such testimony was admitted it was clearly admissible as relevant to such first count. The appellant, had he desired to have such testimony not submitted to the jury should have renewed his objection thereto at the time it was determined not to submit the first count to the jury, and should have requested the court to withdraw same from their consideration. We do not make a ruling as to the admissibility of such testimony on the second count in the indictment.

To the same general effect as bill No. 10 is bill No. 11, with the exception that the witness went further and stated that appellant paid a fine for engaging in such gambling game. This latter testimony was objected to as shown in bill No. 11, and also further because such statement was a conclusion of the witness, was not the best evidence, was immaterial and illegally prejudicial, and such was an absolute refutation as to the accusation of the appellant operating a gambling house in that he paid a fine for himself gambling in such house, was too remote and indefinite, and proof that appellant paid a fine for gambling did not involve moral turpitude, and such testimony was asked to be excluded from the consideration of the jury.

It will be noted that this bill is in the same condition as bill No. 10, in that the appellant was at the time of the introduction of such testimony under a charge of keeping a place for the purpose of gambling, and a mere further proof of his paying a fine for ordinary gambling, while such proof may have been irregularly offered, it was certainly germane to the charge in the first part of this indictment. That it was damaging to the appellant, or prejudicial, we doubt. In fact we note that one of the objections thereto offered by appellant was that such testimony as to the payment of the fine was directly in refutation of the second count in the indictment which charged the banking of a gambling game, and of course if such was thus beneficial to appellant, its introduction could hardly be classed as an error.

We further here note that the appellant introduced no testimony whatever, not taking the stand himself; that the State proved, conclusively to the jury, that he was conducting

such a banking game, and he received the lowest penalty therefor, and we do not see how this testimony injured him in any way. This bill is overruled.

Bill of exceptions No. 12 is as to the number of times appellant had paid a fine for gambling, and what we have just above said is here applicable, and we overrule this bill.

Bill of exceptions No. 13 is of a similar character to bills . Nos. 10, 11 and 12, and presents a similar matter to the above mentioned bills, with the exception: The court excluded the offered testimony for the reason that same was not shown to have been within the period of limitation applicable to this case. We see no error reflected therein.

Bill of exceptions No. 14 is based upon an objection to the witness Schneider stating that appellant was working in this alleged gambling house and game, and to the witness stating that such was his understanding. The question asked was "Do you know whether or ·not this defendant was working there in the game?" to which he gave the controversial answer: "That was my understanding, yes." This is objected to as a conclusion, hearsay and his opinion, and an invasion of the province of the jury. This seems to be rather a shorthand rendition of the facts, and susceptible to the same remarks and ruling as in the above bills.

Bill of exceptions No. 15 is concerned with a question to the witness Schneider in that he was asked by the district attorney whether he knew that Red Craig was indicted for a similar offense. It seems that this witness never answered such question, and the court instructed the jury not to consider the asking of such question. We see no error reflected herein.

Bill of exceptions No. 16 is to the court's refusal to peremptorily instruct the jury to return a verdict of not guilty because of the insufficiency of the testimony. We think the testimony was sufficient to establish the guilt of the appellant, and so thinking this bill is overruled.

We can see no harmful error reflected in the record, and this judgment is accordingly affirmed.

### ON MOTION FOR REHEARING.

HAWKINS, Judge.

In his motion for rehearing appellant cites Ah Kee v. State, 34 S. W. 269, as supporting his contention that the

evidence complained of in bills of exception numbers ten, eleven, twelve and thirteen was not admissible upon the second count charging that appellant kept and exhibited a gaming table and bank upon which count conviction was had. If that had been the only charge in the present indictments as it was in Ah Kee's case we think it would have been controlling here. However, as pointed out in the original opinion the first count in the indictment charged the keeping of a place for the purpose of being used as a place to gamble, etc. We entertain no doubt that the evidence complained of in the bills was admissible under said first count. When the court was called upon to rule regarding the admission of said evidence he ruled correctly. He was never called upon to withdraw the testimony after the State elected to stand on the second count. After the status of the case changed by said election appellant should have availed himself of a motion to withdraw the evidence not pertinent to the second count. Not having done so he cannot be heard to urge as error the ruling of the court which was correct when made. Raulie v. State, 122 Texas Cr. R. 349, 55 S. W. (2d) 562; Vecera v. State, 113 Texas Cr. R. 486, 22 S. W. (2d) 458; Thornton v. State, 118 Texas Cr. R. 345, 40 S. W. (2d) 808. In the opinion in Ah Kee's case (supra) where the evidence complained of was clearly inadmissible, we observed the following significant statement, "If, however, the lowest punishment had been awarded, we would not reverse this judgment because of the admission of this irrelevant testimony."

The general rule regarding argument is fairly stated in Threadgill v. State, 124 Texas Cr. R. 287, 61 S. W. (2d) 821, as follows: "There must be considered not only the argument, (unless it offends against some statutory provision) but the setting in which it appears, the evidence in the case, and the verdict of the jury." See also Vineyard v. State, 96 Texas Cr. R. 401, 257 S. W. 548, and other cases cited in the Threadgill opinion. Giving effect to said rule regarding arguments we are not led to believe that under the facts here present the argument complained of in bill of exception number two furnishes the predicate for a reversible error.

Appellant's motion for rehearing is overruled.