[No. 7892.]

LENDHOLM ET AL. v. THE PEOPLE.

1. CRIMINAL LAW—*Intoxicating Liquors—Construction of Statutes*—The several statutes imposing licenses for the sale of intoxicating liquors in less than a designated quantity and specifying the times and places when and where sales may be made (Rev. Stat. §§ 1798, 1799, 1805, 3995, 3996, 4005,) are parts of one system, and are to be construed so as to be harmonious and consistent in their several provisions.

2. ——*Statute Construed*—"Saloon" in Rev. Stat. sec. 1805 is used as defined in Rev. Stat. sec. 3996. And, as so used, means any place where spirituous or vinous liquors are sold by quantities less than one quart.*

3. ——*Restaurant*—The name by which a place is called does not, in law, fix its status. The character of a place is determined by the business there carried on, and by what habitually takes place therein. A restaurant kept solely as an eating house, is not within Rev. Stat. sec. 1805. Otherwise if intoxicating liquors are there habitually sold to the public. The comparative number of the sales of food, and of liquors, or the comparative revenue derived from one or the other, is not important.

Opinion delivered October 6th, 1681.

*Error to Denver District Court.*—Hon. HUBERT L. SHATTUCK, Judge.

*Syllabus by White, J.

Mr. JOHN T. BOTTOM, and Mr. MILNOR E. GLEAVES, for plaintiffs in error.

Hon. FRED FARRAR, Attorney General, Mr. FRANK C. WEST, Assistant Attorney General.

Mr. JUSTICE WHITE delivered the opinion of the court:

Plaintiffs in error, defendants in the court below, were convicted of keeping open on Sunday a place in which spirituous, vinous, malt and other liquors were kept, sold, bartered, exchanged or given away, and of therein selling intoxicating liquors on said day, contrary to the provisions of Section 1805, R. S. 1908. They were sentenced to pay a fine, and bring the cause here for review.

The case was tried upon an agreed statement of facts. Defendants were the officers and directors, and had actual charge and management of the Cafe Mozart, a "regular restaurant" conducted in the City and County of Denver, serving meals to its patrons, day and night, and furnishing with such meals, for an additional price, intoxicating liquors in quantities less than a quart, to patrons desiring the same. The defendants admit the sale of liquor in small quantities after midnight and upon Sunday in the restaurant, and the drinking of the same therein, but claim that because such sales were made in connection with meals, the law was not violated.

The statute requires, *inter alia,* that "every saloon, bar or other place where" liquors are sold or kept be closed at midnight, and on Sunday, and prohibits, during such time, the sale of liquor therein. The defendants claim that as the word "restaurant" is not specifically mentioned in the statute, it is necessarily excluded from its operation under the rule of construction known as *"ejusdem generis."*

The contention is not sound for the simple reason

that in its generic sense the word "saloon" includes restaurant or eating room, as well as a bar-room or grog-shop. Indeed, in such sense the word does not necessarily indicate a place where intoxicating liquors or even liquid refreshments are sold. It may mean a spacious and elegant apartment for the reception of company or for works of art; a hall of reception; a large room or parlor; a hall for public entertainment or amusement; also, a public room for specific uses, as the saloon of a steamer, (i. e., the main cabin), or it may mean an eating saloon.— *Webster's New International Dictionary, Cardillo v. The People,* 26 Colo. 355, 58 Pac. 678.

The word is not so used, however, in this statute. This was determined in *Cardillo v. The People, supra,* where we held that it is here used "in the sense of a bar-room or grog-shop or drinking saloon kept for supplying intoxicating liquors." We ascribed that meaning to the word, because the title of the act necessarily so limited its sense, and, for the further reason, that a statute in *pari materia* defines a saloon as "any place where spirit-uous or vinous liquors are sold in quantities less than one quart."

A restaurant that is used solely as an eating saloon, therefore, does not come within the terms of the statute. —*City of Denver v. Domedian,* 15 Colo. App. 36, 60 Pac. 1107. It is equally certain, however, that a restaurant where intoxicating liquors are kept and habitually sold to the public in small quantities, does come within its terms, for it is then a "saloon or other drinking place" within the meaning of the law.

In *Scanlon v. City of Denver,* 38 Colo. 401, 88 Pac. 156, a conviction had under an ordinance entitled, "An ordinance concerning the licensing and regulating of dram shops and tippling houses" was under review. We there said: "It is defendant's contention that this section of the ordinance was not intended to include *bona fide* keepers of restaurants, as evidenced by the title,

which relates solely to dram shops and tippling houses. He says that a restaurant is not a dram shop or tippling house. This, however, depends upon the character of the business that is carried on therein. That business may be so conducted in a restaurant as to constitute it a tippling house under the meaning of that term as defined in the authorities, is beyond doubt.''—*Harris v. The People,* 21 Colo. 95, 98, 39 Pac. 1084, involved a conviction under this statute. The facts were the defendant kept a grocery store in which he likewise kept and sold bottled goods and beer in small quantities to any person who called for it. We there said: ''The sale of liquor was made in small quantities, and the invitation and the opportunity for drinking the same were furnished by the defendant to purchasers; and these facts, together with the fact that the house was kept open on the Sabbath day, were sufficient to convict. It is undoubtedly true that if one keeps open on the Sabbath day a public house where intoxicating liquors are sold in small quantities and drunk on the premises, he violates the statute. * * * The evil intended to be prohibited by this statute consists in keeping open a public house where liquor is sold in small quantities, and the opportunity is given to purchasers to drink it on the premises.''

The name by which a place is called does not, in law, fix its status. The character of a place, what it really is, is fixed and determined by that which habitually takes place therein. If the place be open to the public to whom meals are regularly served, it is an eating saloon; but if intoxicating liquors are likewise so habitually served therein, it is also a drinking saloon. Nor can this be affected by the comparative number of sales of food and sales of liquor, or the comparative revenue derived from one or the other. The test of the character of the place can not be: What is its principal business, but what business is there habitually carried on? If it consists, in whole or in part, of habitually selling intoxicating liquors

in quantities less than one quart, to the public generally, it is a saloon or other drinking place within the meaning of the law.

As said in *Hussey v. State,* 69 Ga. 54, 58: "It makes no difference in law whether the place be called a barroom, or a glee-club resort, or a parlor, or a restaurant, if it be a place where liquor is retailed and tippled on the Sabbath day, with a door to get into it, so kept that anybody can push it open and go in and drink, the proprietor of it is guilty of keeping open a tippling house on Sunday. It makes no difference if the drinking be done standing or sitting—at a bar or around a table—it is tippling, and the place where it is done is a tippling house; and if anybody wishing to drink can have access thereto—if ingress and egress be free to all comers—it is a tippling house, kept open on Sunday."

The several legislative acts requiring licenses for the sale of intoxicating liquors in less than a designated quantity, the places where, and the time when the same may be sold, are parts of one system, governed by one spirit and policy and must be construed so as to be consistent and harmonious, one with the other and in their several parts.—*The People v. Gibson,* 53 Colo. 231, 237, 125 Pac. 531. When so construed it is certain that the place described in the stipulation herein constitutes a saloon or other drinking place within the meaning of the law. To sell, exchange or dispose of intoxicating liquors for gain, or knowingly permit the same to be done on his premises, in less quantities than one gallon, it is provided that every person—(except those enumerated in §§ 5521, 5522, R. S. 1908, to which class defendants do not belong)—must have a legal license therefor, §§ 1798, 1799, 4005, R. S. 1908; and a license granted for such purpose shall not authorize the person obtaining the same to sell such liquors in more than one place or house, and every license shall describe the house and place intended to be occupied.—§ 3995, R. S. 1908. It is then declared that all

places where spirituous or vinous liquors are sold by quantities less than one quart shall be deemed to be a saloon, § 3996, R. S. 1908; and by § 1805, R. S. 1908, that every saloon or other place where intoxicating liquors are kept or sold shall be closed on Sunday and after midnight, etc. It is admitted that defendants had a license to sell liquors in less quantities than one quart in the Mozart Cafe, and habitually made such sales therein. The legislative pronouncement is, that such places are saloons, and that they be closed during certain hours. Moreover, the evil of permitting people to congregate in places of public resort and indulge in drinking of intoxicating liquors upon Sunday or after midnight is not lessened by the fact that in restaurants patrons are able to obtain food as well as liquor and may be seated while they drink. No reason is apparent for stopping the sales of liquors over bars at midnight and on Sunday that is not equally applicable to such sales at such times in restaurants or other public drinking places. However, as to the wisdom of such laws we have no concern. The law being clearly an exercise of the police power of the state must be upheld, whatever may be our individual views as to its wisdom. Whether patrons of such restaurants could be supplied therein with intoxicating liquors from adjoining or nearby saloons during the time such places are authorized to keep open and sell liquors, and such transactions not make of such restaurants, saloons within the meaning of the law, should not be determined herein. That question is not involved under the stipulation of facts upon which this case is determined.

The judgment is affirmed.

*Judgment Affirmed.*

Decision *en banc.*

Mr. JUSTICE SCOTT specially concurring:

I concur in the conclusion reached in this case, but cannot agree to much that has been said in the opinion. It is true that our statutes upon this subject when considered together, are incongruous and even absurd. But the sole purpose of the statute under consideration and all others bearing relation to it, was to prohibit the sale of intoxicating liquors on the Sabbath day and between the hours of midnight and six o'clock A. M. on week days, and this regardless as to where the liquor might be sold, or what article, food or otherwise, might be sold at the same time with it. The agreed statement shows that the liquors are sold entirely independent of the meal, and by the drink or bottle, and for a price separate and distinct from the meal. This to my mind constitutes a clear violation of the law.

But I cannot agree that it was the purpose or intent of the legislature to declare that a legitimate hotel or restaurant, the chief business of which is to furnish lodging or food or both, should close its dining room on Sunday, simply because it served liquors with its meals on week days. Such places are not saloons, grog shops nor tippling houses, and cannot be made so by statutory definition or judicial construction, but they are places where intoxicating liquors may not be sold on Sunday or during the prohibited hours on week days. The provision for the closing of places where saloons or grog shops are conducted on Sunday, and the prevention of loitering in such places on Sunday is for the secondary purpose alone of securing the enforcement of the prohibition of liquor sales in such places at the times mentioned.

It is a very natural conclusion that the legislature intended to prohibit the sale of intoxicating liquors in every place on Sunday, and after midnight, but it is a reflection on the intelligence and common sense of its membership to say that they intended to prevent hotels

and restaurants from serving food to the public on Sunday, simply because such places serve liquors with meals on week days, which they have a perfect right to do when provided with proper license.

Mr. JUSTICE GABBERT dissenting.

The majority opinion is based upon the assumption that the statute embraces every place where liquors are sold in less quantities than one quart.

The cases cited from this jurisdiction do not, in my opinion, sustain this conclusion, for the simple reason that in the case at bar the question is whether a keeper of a *bona fide* restaurant who sells liquors in connection with meals is embraced within the statute—a proposition which was in no sense involved in any of our previous decisions—and hence is one of first impression which must be determined from a construction of the statute under the facts stipulated.

The word "saloon," standing alone, has several definitions, but as employed in the statute under consideration should be given that meaning which the word usually conveys, namely, a place to which the general public has access where liquors are sold by the drink, over a bar, to be drunk upon the premises. No one would think of designating a dining-room of a hotel or regular restaurant, where liquors are furnished in connection with meals, a saloon, but would employ the word only in designating a public place where liquors are sold over a bar, or by the glass. This is the popular understanding of what constitutes a saloon, and this restricted meaning should always be given where the context or circumstances require it. The statute says, "Every saloon, bar or other place," where liquors are kept, sold, or given away, shall remain closed during designated hours. A bar as thus used is synonymous with saloon, and this clearly indicates what the legislature meant by the word "saloon": in other words it means, as previously stated,

a place to which the general public has access where liquors are sold by the drink over a bar. The rule of *ejusdem generis* is therefore applicable, which is to the effect that when general words follow the enumeration of particular things the general words will be construed as applicable only to things of the same general nature as those enumerated. The particular words are presumed to describe or designate certain species and the general words following such description are used for the purpose of including other species of the same genus. This rule is based on the obvious reason, that if the legislature had intended the general words to be understood in their restricted sense, the particular classes would not have been enumerated. From this rule it follows, that the word other following an enumeration of particular classes must be read as ''other such like,'' and to include only others of like kind or character. And so here had it been the intention of the general assembly to embrace all places where liquors were kept or sold, there was no occasion to make any enumeration of the places which it was the intention to include, but such intention would have been expressed by stating, that all places where liquors are kept or sold, shall be closed during the designated hours and time.

The intent of the legislature is the law, and where it may be said that from the words employed, the intent is doubtful, they should be so constructed by the application of any of the recognized rules of construction as will avoid anomalous or absurd results. In *Birmingham v. The People,* 40 Colo. 362, 90 Pac. 1121, it was decided that the statute under consideration forbids the places thereby included from being kept open during certain hours, that during that time liquor shall not be sold therein, nor shall persons not connected with the business be permitted to be, or remain in, or around them, during the time prohibited. From the language of the statute a violation of either of these inhibitions, subjects the of-

fender to a fine and imprisonment. Certainly the statute does not mean that the wholesale liquor dealer, who might keep his place open after midnight or on Sunday, could be subjected to the penalties subscribed, or that the dining room of a hotel, wherein liquors were sold with meals, or a restaurant where the same business is carried on, must be closed during the prescribed time, even though liquors were not sold during that period, or the proprietor would be subject to fine and imprisonment, and yet by the construction given the statute in the majority opinion, the inevitable conclusion is that such places must remain closed during the hours mentioned in the statute. There is no escape from this conclusion, for the statute states in unmistakable terms, that all the places which it includes, must close and remain closed during the times mentioned. The result which must follow the construction given the statute by the majority opinion indicates beyond question that such was not the intent of the legislature in enacting it, but that such intent is ascertained by applying the rule of *ejusdem generis,* which would exempt the proprietors of the Mozart Cafe from its operation.

The judgment of the district court should be reversed, and the cause remanded with instructions to dismiss the proceeding.